IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jock Lanoy Hamlin, | ) | Civil Action No. 8:12-cv-3601-RMG-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[2] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On February 16, 2010, Plaintiff protectively filed an application for DIB, alleging an onset of disability date of April 14, 2009. [R. 120–123.] The claim was denied initially on June 23, 2010 [R. 100–101, 104–107] and was denied on reconsideration by the Social

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

Security Administration ("the Administration") on November 1, 2010 [R. 102–103, 109–111]. On November 23, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 112], and on March 30, 2011, ALJ Ivar E. Avots conducted a de novo hearing on Plaintiff's claims [R. 29-65].

The ALJ issued a decision on June 6, 2011, finding Plaintiff not disabled under the Social Security Act ("the Act") from April 14, 2009 through the date of the decision. [R. 11-23.] At Step 1[3], the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2014, and had not engaged in substantial gainful activity since April 14, 2009, his alleged onset date. [R. 16, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: back disorder and mood disorder. [R. 16, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. [R. 16, Finding 4.] The ALJ specifically considered Plaintiff's musculoskeletal impairments under Listings 1.02 and 1.04 and found that the listing requirements were not met; he also considered Plaintiff's mental impairments under Listing 12.04 and found that "paragraph B" criteria" were not satisfied. [R. 17.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ made the following findings as to Plaintiff's residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). To wit, he can lift or carry up to twenty pounds on an occasional basis and up to ten pounds on a frequent basis.

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, infra.

> He can stand, walk, and sit for up to six hours during any given eight hour work period.  He has no limitations in his ability to push or pull with the lower and upper extremities.  Claimant is further restricted to occasional stooping and climbing of ladders, ropes, and scaffolds.  He is restricted to balancing, kneeling, crouching, crawling, and climbing ramps and stairs on a frequent basis.  He must avoid concentrated exposure to occupational hazards such as machinery and unprotected heights.
>
> Further, as a result of claimant's moderate mental limitations, I find that claimant can concentrate, persist and work at pace to do detailed instructions and tasks for up to two hours in an eight hour workday and 40 hour work week.  He has no limitations regarding ability to interact with coworkers, supervisors, and members of the general public in a typical workplace setting.

[R. 18, Finding 5.]  Based on this RFC finding, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work.  [R. 22, Finding 6.]  At Step 5, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 22, Finding 10.]  On this basis, the ALJ found Plaintiff had not been under a disability as defined by the Act from April 14, 2009 through the date of the decision, June 6, 2011.  [R. 23, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 8–10] and the Council declined [R. 1–5], making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  *See* 20 C.F.R. § 404.981.  Plaintiff filed this action for judicial review on December 20, 2012.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and should be remanded because the ALJ

1.    failed to properly consider all evidence of record prior to Step 4 and relied on the opinion of a medical consultant regarding impairment severity which was not based on review of the entire record [Doc. 8 at 12–15; Doc. 11 at 1–2];

2.    applied an improper legal standard in evaluating Plaintiff's mental limitations [*id.* at 15–19; *id*. at 3];

3.    applied an improper legal standard in evaluating the psychiatric opinion and evidence of record from physician assistant Joseph Friddle [*id.* at 19–21; *id.* at 3–4]; and

4.    applied an improper legal standard in evaluating Plaintiff's credibility [*id.* at 22–25; *id*. at 4].

The Commissioner, on the other hand, contends the decision is supported by substantial evidence and the ALJ

1.    properly evaluated the medical and opinion evidence [Doc. 9 at 8–14];

2.    properly evaluated Plaintiff's moderate mental limitations and properly assessed the medical evidence with respect to Plaintiff's mental limitations [*id*. at 14–21]; and

3.    properly evaluated Plaintiff's credibility in accordance with the Fourth Circuit's two-step process for evaluating subjective complaints [*id*. at 21–29].

## <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must

4

include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient

reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.,* 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch,* 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger,* 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan,* 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g., Jackson v. Chater,* 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris,* 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler,* 782 F.2d 1176,

1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

---

[4] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.   *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit,

9

whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

10

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

primarily from an exertional impairment, without significant nonexertional factors.[6]  20

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929,

930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases

involving exertional limitations).   When a claimant suffers from both exertional and

nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.

In such a case, the Commissioner must use a vocational expert to establish the claimant's

ability to perform other work.   20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50

("Because we have found that the grids cannot be relied upon to show conclusively that

claimant is not disabled, when the case is remanded it will be incumbent upon the

[Commissioner] to prove by expert vocational testimony that despite the combination of

exertional and nonexertional impairments, the claimant retains the ability to perform

specific jobs which exist in the national economy.").   The purpose of using a vocational

expert is "to assist the ALJ in determining whether there is work available in the national

economy which this particular claimant can perform."   *Walker*, 889 F.2d at 50.   For the

vocational expert's testimony to be relevant, "it must be based upon a consideration of all

other evidence in the record, . . . and it must be in response to proper hypothetical

questions which fairly set out all of claimant's impairments."   *Id.* (citations omitted).

## II.    Developing the Record

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

12

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made

13

conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative

examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

15

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

16

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria.  *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor.  But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations

are based on improper or irrational criteria they cannot be sustained.").

## MEDICAL HISTORY

From April 2009 to October 2010, Plaintiff was treated by Dr. Alexander Patrick and

Dr. Terrell Stone of Patrick and Crawford Family Practice for complaints of back pain and

other medical impairments. [R. 234–239, 244–256, 259–285, 410–418, 495–501.] He was referred to and completed physical therapy at Elite Physical Therapy beginning in October 2009. [R. 288–386.] In March 2010, Plaintiff was discharged secondary to "plateaued progress." It was noted Plaintiff reported a 65-70% improvement since initiation of treatment with improved overall mobility, flexibility, and strength. [R. 385.]

Plaintiff was treated by Dr. McHenry at Steadman Hawkins Clinic from June 2009 to October 2010. [R. 201–208, 241–242, 446–452.] On June 10, 2009, Dr. McHenry noted Plaintiff had a normal gait and could toe walk, heel walk, and perform a single straight stance without difficulty. He noted April 2009 X-rays showed mild degeneration at L3-4 and complete sacralization at L5 and a May 2009 MRI showed diffuse disc bulging at L5-S1 [R. 203.]

Dr. J. Reilly Keffer of Upstate Medical Rehabilitation prescribed Lortab and provided facet joint and epidural steroid injections from September 2009 to July 2010. [R. 387–399, 408–409.] On April 12, 2010, Dr. Keffer thought Plaintiff probably could not return to his previous job which required heavy duty lifting, but encouraged Plaintiff to either find a different type of job or go back to school to retrain in some other field. [R. 390.]

On September 22, 2010, psychiatrist Dr. Jeffrey Smith of Piedmont Psychiatric Services began treating Plaintiff on the referral of Dr. Stone. Dr. Smith noted Plaintiff had a depressed affect and an anhedonic mood. He assigned a Global Assessment of Functioning ("GAF")[7] score of 50, and diagnosed Plaintiff with major depressive disorder

---

[7] The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 41 to 50 indicates "serious symptoms" or "serious difficulty in social or occupational functioning[.]" Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000). It should be noted that in the latest edition of the Diagnostic and Statistical Manual of Mental

and generalized anxiety disorder. Dr. Smith thought Plaintiff might need cognitive behavioral therapy ("CBT") in the future. [R. 420–421.]

On October 13, 2010, Physician's Assistant ("PA") Joseph Friddle, supervised by Dr. Smith, noted Plaintiff's overall anxiety was much better, he was sleeping better, he had no change in depressive symptoms, his affect was a bit fatigued, and his mood was anhedonic. Zoloft was discontinued, Cymbalta for depression and pain was added, and Clonazepam for anxiety was continued. [R. 419.]

Various state agency physicians reviewed Plaintiff's medical records and made findings concerning his RFC. On June 23, 2010, Dr. Carl E. Anderson, a state agency physician, concluded Plaintiff could lift ten pounds frequently and twenty pounds occasionally; sit, stand, and/or walk for six hours in an eight-hour day; could only occasionally climb ladders, ropes, and scaffolds; and could only occasionally stoop. [R. 400–405.] Dr. Freidoon Malek adopted Dr. Anderson's opinion on October 20, 2010. [R. 424.] On October 27, 2010, state agency psychiatrist Dr. Barry Rudnick opined Plaintiff had an affective disorder that resulted in mild limitations in activities of daily living; mild limitations in social functioning; and moderate limitations as to concentration, persistence, and pace. [R. 436, 440–441.]

After the above state agency opinions were rendered, additional medical notes were added to the record on November 23, 2010. [R. 446–501.] The pertinent records are discussed below.

Disorders:
 [i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.
Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013).

On September 24, 2010, Dr. McHenry noted Plaintiff's low back pain was not controlled by conservative pain management, Plaintiff experienced intermittent lumbar radiculopathy, and Plaintiff's lumbar MRI and x-ray indicated a degenerative segment at L5/S1 with disc collapse, increased signal indicative of significant annular disruption, and likely vacuum disc phenomenon. Dr. McHenry discussed the risks of fusion surgery. [R. 450–452.] On October 20, 2010, Dr. McHenry noted Plaintiff ambulated with a cane and had an antalgic gait. He again discussed the possibility of doing a spinal fusion at L5-S1. Dr. McHenry noted surgery was not the optimum treatment option, and discussed the risks and benefits, including significant relief, of the surgery. [R. 447–448.]

On November 3, 2010, PA Friddle noted Plaintiff's overall anxiety was much better, he was sleeping better, his mood was a bit brighter, and his mood was anhedonic (but improved). Cymbalta was increased. [R. 466.] On December 1, 2010, Plaintiff reported he was more irritable and snappy with interrupted sleep. PA Friddle noted Plaintiff's pain caused most of Plaintiff's psychiatric symptoms. Plaintiff's mood was anhedonic, but improved. PA Friddle changed Plaintiff's medications. [R. 465.] Plaintiff reported he was not as angry, was a lot calmer, and was a bit happier on December 22, 2010. PA Friddle noted Plaintiff was a bit frustrated and his mood was anhedonic, but improved. Lyrica was added for pain. [R. 464.] Due to a misunderstanding, Plaintiff stopped taking Pristiq and reported he felt worse on February 3, 2011. PA Friddle counseled Plaintiff on use of medications. [R. 463.] On February 9, 2011, Plaintiff's wife reported to PA Friddle that Plaintiff had crying spells and was irritable, anxious, panicky, depressed, and over sedated. Prozac was added. [R. 485.] On March 9, 2011, Plaintiff thought his mood was improved, he was less irritable and snappy, and he was coping with stress better. He also reported

20

his wife did not think his mood had improved.  PA Friddle noted Plaintiff was a bit frustrated and had an anhedonic, but improved, mood.  Plaintiff's Prozac was increased and his other medications were continued.  [R. 484.]

On February 1, 2011, PA Friddle completed two medical source statements. He opined that Plaintiff's severe depression prevented him from handling normal stressors and job tasks; Plaintiff could not be expected to interact with peers, the public, or supervisors appropriately; and Plaintiff could not consistently attend work eighteen days out of twenty. [R. 467–472.]

On February 18, 2011, Dr. Stone completed a form on which he indicated Plaintiff could only occasionally lift/carry up to ten pounds; could only sit for twenty to thirty minutes and walk for thirty minutes in an eight-hour workday; required the use of a cane to ambulate as needed; could only occasionally reach, handle, finger, feel, and push/pull; could never perform postural activities; and had pain severe enough to interfere with the attention and concentration needed to perform even simple work tasks.  Dr. Stone thought it would be most beneficial for Plaintiff's pain specialist to complete the form.  [R. 459–461.]

On February 1, 2011, Plaintiff was treated by Dr. Ashley Mullinax of Upstate Rehabilitation, where Plaintiff previously saw Dr. Keffer.  Plaintiff reported stabbing back pain that went down both his legs as well as an increase in depression.  Dr. Mullinax noted Plaintiff had 5/5 muscle strength, intact sensation, pain out of proportion to examination, walked with a cane, and had a heel spur which prevented him from putting his whole foot down on the left side while walking.  [R. 488.]  On March, 3, 2011, Dr. Mullinax completed a medical source statement for Plaintiff's long-term disability insurance carrier in which she indicated Plaintiff was capable of sitting and/or standing a total of eight hours in a workday,

but did not specify the total amount of time he could stand or sit at one time. She thought Plaintiff could lift ten pounds occasionally, and should avoid stooping, crawling, kneeling, or climbing ladders. Dr. Mullinax noted the assigned limitations were based on Plaintiff's subjective complaints. [R. 481–482.]

Dr. Yashbir Rana, a physician board certified in occupational medicine, reviewed Plaintiff's medical history and performed a physical examination on March 4, 2011. Dr. Rana noted Plaintiff walked with a guarded gait, had paralumbar muscle spasms, and had limited range of motion at the waist. Dr. Rana thought Plaintiff was limited to lifting or carrying only ten pounds occasionally, sitting up to four hours in an eight-hour day, and standing and walking a total of only two hours in an eight-hour day. [R. 473–480].

## APPLICATION AND ANALYSIS

**Physical RFC**

Plaintiff contends the ALJ failed to evaluate all the evidence in making his RFC finding and erred in relying on the opinions of two non-examining state agency consultants Dr. Anderson and Dr. Malek who failed to perform a complete review of Plaintiff's medical records. [Doc. 8 at 15.] Plaintiff also contends the ALJ erred in failing to consider his use of a cane for walking as the use of a cane conflicts with the ALJ's finding that he could perform light work. [*Id.* at 24.]

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause

22

> physical or mental limitations or restrictions that may affect his
> or her capacity to do work related physical and mental
> activities. Ordinarily, RFC is the individual's maximum
> remaining ability to do sustained work activities in an ordinary
> work setting on a regular and continuing basis, and the RFC
> assessment must include a discussion of the individual's
> abilities on that basis. A "regular and continuing basis" means
> 8 hours a day, for 5 days a week, or an equivalent work
> schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to
> medically determinable impairments. It is incorrect to find that
> [a claimant] has limitations or restrictions beyond those caused
> by his or her medical impairment(s) including any related
> symptoms, such as pain, due to factors such as age or height,
> or whether the [claimant] had ever engaged in certain activities
> in his or her past relevant work (e.g., lifting heavy weights.)
> Age and body habitus (i.e., natural body build, physique,
> constitution, size, and weight, insofar as they are unrelated to
> the [claimant]'s medically determinable impairment(s) and
> related symptoms) are not factors in assessing RFC . . . .

*Id.* at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96–8p specifically states, "The RFC

23

assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

**ALJ's RFC Analysis**

The ALJ indicated that his RFC was supported by the state agency RFC recommendation that was "based on an analysis of the available medical evidence". [R. 18.] The ALJ explained

> [In the state agency RFC recommendation], the consultant opined that claimant had no radicular pain or paresthesias associated with his back pain, and that MRI available to him showed only minimal to moderate degenerative changes (Exhibit 6F, Page 20).
>
> Claimant was found able to heel-toe walk, execute normal gait consistently, and execute relatively normal range of motion demonstrations (Page 3). In the end, the consultant found claimant mostly credible, but noted that the objective evidence supported his finding that claimant could engage in light work (Page 7).
>
> This RFC recommendation was supported by an independent state agency case analysis (Exhibit 12F). Therein, the consultant noted that recent examination of the claimant found him able to rise up on his heel and toe. Only mild tenderness was assessed in the lumbar back. Medical evidence received in the interim between the RFC assessment and this case analysis indicated the claimant's back problem had not worsened at all.
>
> A second case analysis conducted in October of 2010 elaborated on claimant's mental impairments. To wit, notes from Piedmont Psychiatric Services were cited, showing improvement of claimant's anxiety (Exhibit 13F). A companion mental RFC assessment, also completed by the state agency, showed that claimant had not significant limitations in 17 of 20 measured sub domains of mental functioning (Exhibit 15F).

Independent medical noted from Stedman Hawkins Clinic discussed claimant's back condition and provided further support for the RFC established herein. September, 2010 notes indicate diagnoses of lumbar back pain and leg pain (Exhibit 18F). However, these same notes include review of MRI illustrating normal spinal features with mild degenerative changes and L5-S1 disc space collapse.

These notes also included observation fo normal gait (Id., at Page 5). While claimant received physical therapy from Upstate Medical Rehabilitation, his clinical history was repeatedly classified as stable, and he regularly reported no side effects of medications (Exhibit 28F). Claimant was found able to ambulate and found to be in no acute distress (Id., at page 6).

[R. 18–19.]

**Discussion**

In making his physical RFC finding, the ALJ relied in part on the medical records of Dr. McHenry at the Steadman Hawkins Clinic. [R. 18.] The ALJ stated these records supported his findings because MRI evidence illustrated only mild degenerative changes and L5-S1 disc space collapse, and notes from September 2010 indicated Plaintiff had a normal gait. [R. 18–19.] There is, however, no discussion by the ALJ of the more significant findings at L5-S1 noted by Dr. McHenry. There is also no discussion of Dr. McHenry's offer to perform spinal surgery at L5-S1 as a treatment option for Plaintiff. In September 2010, Dr. McHenry noted an MRI of Plaintiff's lumbar spine showed degenerative segment at L5-S1 "significant with collapse and increased signal indicative of significant annular disruption." [R. 451.] He also wrote that radiographs obtained in September 2010 showed collapse of the L5-S1 disc space and likely a vacuum disc phenomenon. [R. 451.] In September 2010, Dr. McHenry noted Plaintiff had persistent back pain and radicular leg pain not relieved with non-surgical management. [R. 450.] Dr.

25

McHenry discussed possible spinal fusion at L5-S1 in September and October 2010. [R. 448, 451–452.] Additionally, Dr. McHenry noted Plaintiff walked with an antalgic gait in October 2010. [R. 448.]

The ALJ also relied on the opinions of state agency physicians Dr. Anderson and Dr. Malek in making his physical RFC finding. [R. 18.] These state agency physicians, however, did not consider later added evidence, including the September and October 2010 records from Dr. McHenry and the opinions of Dr. Stone, Dr. Mullinax, and Dr. Rana that Plaintiff had the RFC for less than sedentary work. The Commissioner contends these additional records did not change the character of the evidence these state agency physicians considered and the ALJ properly considered and discounted the opinions rendered by Plaintiff's treating and examining physicians.

As discussed above, however, the additional treatment notes from Dr. McHenry from September and October 2010 discuss MRI and radiograph evidence of degenerative disease at L5-S1, indicate Dr. McHenry offered to perform spinal fusion surgery at L5-S1, and record that Plaintiff's gait was antalgic in October 2010. The ALJ did not fully discuss this evidence, and the state agency physicians did not review it. Additionally, the ALJ discounted Dr. Stone's opinion in part because it was "completed after a one-time visit." [R. 21.] A review of the record, however, indicates Dr. Stone treated Plaintiff on at least two other occasions—November 9, 2009 and July 19, 2010. [R. 235, 412–413.]

Dr. Rana's opinion was discounted by the ALJ because it was based on a checklist type of assessment and was unsupported by citation to objective medical evidence or examination observation. [R. 20–21.] A review of the record, however, reveals Dr. Rana's opinion was based in part on his conclusion that Plaintiff suffered from severe spinal

26

degeneration at L5/S1.  [R. 474–478.]  In his evaluation record, Dr. Rana noted the MRI of Plaintiff's lumbar spine "revealed transitional anatomy in the lumbar spine with a partially formed rudimentary disc at the S1/S2 level and severe degenerative changes at L5/S1." [R. 480.]  Additionally, Dr. Rana's examination revealed Plaintiff used a cane, had spasm of his paralumbar muscles, and had decrease range of motion at his waist.  [R. 480.]

The ALJ also does not appear to have considered Plaintiff's use of a cane in formulating the physical RFC.  The Commissioner contends the ALJ was not required to do so because Plaintiff did not show the cane was prescribed by a medical provider. Appendix One (Listing of Impairments) of the regulations, however, provides that "[t]he requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4).  Social Security Ruling 96-9p, which discusses the implications of an RFC for less than a full range of sedentary work, provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

SSR 96-9p, 61 Fed.Reg. 34,478–01, at 34,482 (July 2, 1996).

In June 2010, in response to Plaintiff's discussion of using a cane when he was experiencing back spasms to prevent a fall, Dr. Keffer stated it might be a good idea and certainly could not hurt Plaintiff.  [R. 409.]  In an August 2010 function report, Plaintiff was noted to use a cane, but the response "not applicable" was written next to a question of

27

when was it prescribed. [R. 187.] Dr. McHenry noted Plaintiff ambulated with a cane and had an antalgic gait in October 2010. [R. 448.] In his February 2011 opinion, Dr. Stone checked a box indicating Plaintiff required a cane to ambulate. He wrote that Plaintiff could walk only one block without the use of a cane and indicated the use of the cane was medically necessary "as needed." [R. 460.] Dr. Mullinax also noted Plaintiff walked with a cane in February 2011. [R. 488.] Although Dr. Rana checked a box on a form indicating Plaintiff was able to ambulate without a cane [R. 474], his examination notes indicated Plaintiff used a cane while ambulating and Plaintiff's walking was guarded [R. 480]. There is conflicting evidence regarding whether Plaintiff's cane was medically necessary. There is no discussion in the ALJ's decision as to Plaintiff's use of a cane, such that it is unclear whether the ALJ considered it in determining Plaintiff's physical RFC.

In light of the above, the Court finds that the ALJ's decision does not allow the Court to track the ALJ's reasoning and be assured that all record evidence was considered, and to understand how the ALJ resolved conflicts in the evidence. *See, McElveen v. Colvin*, 2013 WL 4522899 at *11 (DSC, 2013).   For these reasons, the Court is unable to conclude the ALJ's determination is supported by substantial evidence and recommends the case be remanded for further administrative action.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly evaluate all of the medical and opinion evidence in formulating his physical RFC is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take

into consideration Plaintiff's remaining allegations of error, including Plaintiff's allegations that the ALJ failed to properly evaluate his mental limitations and his credibility.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for further administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 23, 2014
Greenville, South Carolina