## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK CHTN, SC

2014 FEB 14  A 9 33

Jock Lanoy Hamlin,                        )
                                          )
    Plaintiff,                        )
                                          )    Civil Action No. 8:12-3601-RMG
    vs.                               )
                                          )
Carolyn W. Colvin, Acting Commissioner    )
of Social Security,                       )    **ORDER**
                                          )
    Defendant.                        )
_____)

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of

the final decision of the Commissioner of Social Security denying his claim for Disability

Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC,

this matter was referred to a United States Magistrate Judge for pre-trial handling. The

Magistrate Judge issued a Report and Recommendation on January 23, 2014, recommending that

the Court reverse the decision of the Commissioner. (Dkt. No. 15). The Commissioner filed

objections to the Report and Recommendation. (Dkt. No. 17). As more fully set forth below, the

Court reverses the decision of the Commissioner and remands for further action consistent with

this order.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is

-1-

made.  The Court may accept, reject, or modify, in whole or in part, the recommendation of the

Magistrate Judge.  28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social

Security Act is a limited one.  The Act provides that the "findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C.

§ 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but

less than preponderance."  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  This

standard precludes *de novo* review of the factual circumstances that substitutes the Court's

findings of fact for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however,

that the findings of the administrative agency are to be mechanically accepted.  The statutorily

granted right of review contemplates more than an uncritical rubber stamping of the

administrative action."  *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  Further, the

Commissioner's findings of fact are not binding if they were based upon the application of an

improper legal standard.  *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to

undertake a five-step sequential process.  At Step One, the Commissioner must determine

whether the applicant is engaged in substantial gainful work.  20 C.F.R. § 404.1520(a)(4)(i).  If

the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to

Step Two, which involves a determination whether the claimant has any "severe medically

determinable physical or mental impairment."  *Id.* § 404.1520(a)(4)(ii).  If the claimant has one

or more severe impairments, the Commissioner proceeds to Step Three, which involves a

-2-

determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Where the claimant has multiple impairments but none satisfy independently the criteria for a listed impairment, the Commissioner is obligated to consider the combined effect of the various impairments and determine whether they are the medical equivalent of the criteria of a listed impairment. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 49-50 (1989); 20 C.F.R. § 416.926.

If the claimant does not have a listed impairment or the medical equivalent of a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available "work which exists in significant numbers either in the region where [the claimant] lives or in several regions

-3-

of the country" he can perform in light of the RFC determination. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the burden shifts to the Commissioner to "show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The

-4-

Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Under the Treating Physician Rule, preference is generally given to the opinions of treating physicians over the opinions of non-examining chart reviewers or one time examiners. 20 C.F.R. § 404.1527(c)(1),(2).

## Factual Background

Plaintiff was initially seen by an orthopaedic surgeon, Dr. Timothy McHenry, on June 10, 2009, on a referral from his family physician because of a four month complaint of low back pain. Plaintiff was then out of work on employer provided disability. Plaintiff had no history of injury and the pain had developed with a gradual onset. Tr. 202. An MRI of the Lumbar Spine, which had been conducted on May 4, 2009, on the order of his family physician, was interpreted by a radiologist at that time to show "diffuse annular bulging" at L5-S1 with a narrowing of the subarachnoid space, resulting in "contact[] with the exiting nerve root sleeves," and degenerative changes. Tr. 255. Plaintiff at that time did not report a history of radicular pain to his legs. Tr. 202. He did report he had been participating in physical therapy for approximately one month and this had given him 50% relief. Tr. 202. Dr. McHenry diagnosed Plaintiff with degenerative disc disease and directed him to return as needed. Tr. 203-04.

Plaintiff returned to Dr. McHenry on August 19, 2009, still complaining of back pain. He reported gradual improvement with physical therapy and stated he had no leg pain. He indicated, however, that he had not come to the point he could return to work. Following a discussion of options, Dr. McHenry referred Plaintiff to a pain management clinic to undergo conservative treatment. Tr. 206. Plaintiff was thereafter seen by Dr. J. Reilly Keffer, D.O., a pain medicine

-5-

specialist, who administered various epidural injections to provide Plaintiff relief from his chronic low-back pain. The spinal injections failed to provide Plaintiff any long term relief, and he continued to complain of significant low back pain. Tr. 387, 392. Dr. Keffer recommended Plaintiff seek out an alternative to the heavy work in which he had previously been engaged but encouraged him not to go on Social Security disability. Tr. 387, 390.

Pursuant to Plaintiff's application for Social Security disability, his medical records were reviewed by Dr. Carl Anderson. Dr. Anderson had no treating or examining history with Plaintiff. Based upon a review of Plaintiff's medical records, Dr. Anderson issued a Physical RFC Assessment on June 23, 2010, in which he concluded Plaintiff was capable of performing light work. Tr. 400-05. He found that Plaintiff had "no radicular pain" and moderate degenerative changes present on the May 2009 MRI. Tr. 401. Dr. Anderson opined Plaintiff could lift ten pounds frequently and twenty pounds occasionally and could sit or stand six hours in an eight-hour workday. Tr. 401. He noted in his report the opinions of Plaintiff's family practice and pain management physicians that the claimant was no longer capable of heavy work, a conclusion which he obviously agreed. Tr. 407. Another non-treating and non-examining physician, Dr. Freidoon Malek, issued a one-third page "Case Analysis" on October 27, 2010, finding that Dr. Anderson's RFC was "reasonable." Tr. 424.

Plaintiff returned to Dr. McHenry on September 24, 2010, reporting persistent back pain and now bilateral radicular pain. He advised Dr. McHenry he had been out of work for over a year and had undergone spinal injections and physical therapy without any functional benefit. Tr. 450. Dr. McHenty ordered and reviewed new plain x-rays and concluded that they showed "collapse of the L5-S1 disc space and likely a vacuum disc phenomenon." Tr. 451. He also re-

-6-

read the March 2009 MRI of the lumbar spine, now in light of the new plain films and Plaintiff's one and one-half years of unsuccessful conservative treatment, and found that it showed "collapse" of the L5-S1 disc space and "increased signal indicative of significant annular disruption." Tr. 451. In light of these new findings and developments, Dr. McHenry discussed in detail with Plaintiff the risks and benefits of a spinal fusion surgery. Tr. 451. Plaintiff had another office visit with Dr. McHenry on October 20, 2010, to again discuss the surgery option. Dr. McHenry advised Plaintiff and his wife that surgery was "not the optimum treatment option . . . for this diagnosis." Tr. 448. According to the record, Plaintiff has followed Dr. McHenry's advice and not undergone any surgical procedure.

Subsequent to these September and October 2010 office visits with Dr. McHenry, two treating physicians provided opinions to the Social Security Administration about Plaintiff's functional limitations. Dr. Patrick Stone, a treating family physician, completed a Medical Source Statement on February 18, 2011, indicating that Plaintiff could only occasionally lift ten pounds and could not sit or stand longer than thirty minutes at a time. Tr. 459-61. Another treating physician, Dr. Ashley Mullinax, a pain medicine specialist, completed a document titled "Capacity Questionnaire" on March 3, 2011, in which she opined that Plaintiff could only occasionally lift ten pounds but had the capacity to sit or stand intermittently up to eight hours in a workday. Tr. 481-82. If the opinions of Drs. Stone and Mullinax were adopted, the practical impact would be a finding of disability because the claimant would be capable of less than sedentary work.

Plaintiff also underwent a medical examination by Dr. Yashbir Rana, who is board certified in occupational medicine. Dr. Rana concluded in a Medical Source Statement

-7-

completed on March 4, 2011, that Plaintiff suffered from "severe spinal degeneration at L5/S1 . . . with resultant lower back pain and radicular pain into both legs." Tr. 473. He concluded Plaintiff could only occasionally lift ten pounds, could stand or walk only thirty minutes at a time and stand or walk only one hour in an eight-hour day. Tr. 473-74. Again, if Dr. Rana's opinions were adopted, Plaintiff would be deemed disabled because he would not have the residual functional capacity to perform even sedentary work.

An administrative hearing was conducted regarding Plaintiff's Social Security disability application on March 30, 2011. Plaintiff testified that he developed back pain that had progressively worsened and forced him out of work in April 2009. Tr. 37. He described both low-back pain and radiating pain down both legs. Tr. 37-38. He also described the course of his conservative treatment, including physical therapy, spinal injections, and pain medications, none of which provided him control of his pain. Tr. 39-40. Plaintiff further testified he could lift no more than five or ten pounds at a time and could not sit or stand four hours in day. Tr. 41.

The Administrative Law Judge ("ALJ") issued a decision on June 6, 2011, finding that Plaintiff was not disabled under the Social Security Act because he retained the capacity for light work. The ALJ found that Plaintiff had the capacity to lift ten pounds frequently and twenty pounds occasionally and could sit, stand, or walk six hours in a eight-hour workday. Tr. 18. In reaching these conclusions, the ALJ did not address the worsening diagnosis of Dr. McHenry reflected in the September 24, 2010 office notes following the treating physician's review of newly conducted plain x-rays and re-reading of the May 2009 MRI.

The ALJ did, however, address the opinions of the two treating physicians and the one examining physician who had submitted reports in early 2011 describing significant functional

-8-

limitations of Plaintiff, effectively rejecting all of them. The opinions of Dr. Stone, the treating

family physician, were "dismissed" because the ALJ did not approve of the form Dr. Stone had

utilized and had been completed after "a one time visit." Tr. 21. In fact, Dr. Stone had treated

Plaintiff on at least two other occasions. Tr. 235, 412-13. The opinions of Dr. Mullinax, the

treating pain medicine specialist, were given "no persuasive weight" because the ALJ concluded

that the physician's opinion that the claimant could sit, stand, or walk up to eight hours a day was

in "direct contradiction" of her opinions regarding limitations on lifting, climbing, and stooping.

Tr. 21-22. The ALJ also gave "little to no persuasive weight" to the opinions of the examining

physician, Dr. Rana, because he did not approve of the "checklist type" format of the form he

completed. Tr. 20-21. On the other hand, the ALJ gave "particular persuasive weight" to the

"state agency recommendations," noting in particular the consultant's RFC which found Plaintiff

had "no radicular pain" and the MRI "showed only minimal to moderate degenerative changes."

Tr. 18, 20.

### Discussion

The ALJ's decision does not remotely comply with the requirements of the Treating

Physician Rule. First, the ALJ fails to note and address the evolution of the diagnosis and

opinions of the treating orthopaedic specialist, Dr. McHenry. In his initial evaluation of Plaintiff

in the summer of 2009, Dr. McHenry described a patient who had improved after a month of

physical therapy and did not report symptoms of radicular pain. Tr. 202-206. Dr. McHenry then

referred Plaintiff to a pain medicine specialist for conservative treatment. Tr. 206. When

Plaintiff returned to Dr. McHenry in September 2010, he had failed all conservative treatment

and was now reporting radicular pain. Tr. 450. A plain film performed in Dr. McHenry's office

-9-

on September 24, 2010, revealed "collapse of the L5-S1 disc space and likely a vacuum disc phenomenon." Tr. 451. Dr. McHenry also re-read the earlier MRI and described "increased signal indicative of significant annular disruption." *Id.* Notably, the newly performed plain film and Dr. McHenry's findings at the September 24, 2010 office visit were not reviewed by the state agency consultants and reflected a far graver assessment of Plaintiff's condition than had been reflected in the reports of the state agency consultants. The failure to note the opinions set forth in Dr. McHenry's September and October 2010 office records and to evaluate them under the factors set forth in the Treating Physician Rule require the reversal of the Commissioner's decision in this matter. This would include consideration of such factors as Dr. McHenry's treatment history, examination history, supportability of his opinions, particularly the radiographic evidence, and the fact that he is a specialist. 20 C.F.R. § 404.1527(c). Further, the adoption of the opinions of the non-examining and non-treating consultants was done without weighing their opinions pursuant to the standards of the Treating Physician Rule, as explicitly required by the regulation. *Id.* § 404.1527(e)(1)(ii). In weighing the opinions of the various physicians in the record, the ALJ should address the areas of conflict or disagreement, particularly regarding the interpretation of the radiographic evidence and the presence or absence of radicular pain.

Second, the ALJ's reasons for rejecting of the opinions expressed by two of Plaintiff's treating physicians and one examining physician do not rise to the level of "good reasons" and are plainly contrary to the Treating Physician Rule. SSR 96-2P. The ALJ rejected the opinions of a treating family physician, Dr. Stone, because the ALJ did not approve of the form on which the opinions were submitted. Tr. 21. The ALJ rejected Dr. Rana's opinions for the same reason.

-10-

Tr. 20-21. The forms used by Drs. Stone and Rana are pretty standard fare in Social Security cases and have the benefit of eliciting the opinions of busy physicians with the minimal expenditure of time. If for some reason the ALJ finds the forms displeasing, the proper response is not to ignore the opinions but to contact the physicians involved and request further elaboration of their opinions. To cast aside the opinion of treating or examining physicians because the forms on which the opinions were expressed falls far short of the Commissioner's duty to "always consider the medical opinions in your case record." 20 C.F.R. § 404.1527(b).

The ALJ's rejection of the opinions of Dr. Mullinax, the treating pain medicine specialist, was based upon the alleged "direct contradiction" in her opinion that the Plaintiff could sit, stand, or walk, intermittently, up to eight hours in a workday with other opinions indicating significant limitations on lifting, stooping, and other work-related activities. Tr. 21-22. The Court's review of Dr. Mullinax's report reveals no "direct contradiction," and the Court finds the ALJ's finding of "direct contradiction" to be unsupported by substantial evidence. It may well be that, if asked, Dr. Mullinax, drawing upon her medical expertise, might provide the ALJ a reasonable explanation for her opinions. Tr. 481-82. Where the treating physician provides information that is incomplete or requires further explanation, the ALJ has an affirmative duty to gather that additional information to create a "full and fair record." 42 U.S.C. § 423(d)(5)(B); *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). The proper response is not to simply discard the opinion of the claimant's treating specialist physician.

The ALJ's failure on multiple occasions to evaluate the expert medical opinions in this administrative record under the standards of the Treating Physician Rule clearly requires reversal of the Commissioner's decision and remand to the agency. The Magistrate Judge additionally

-11-

addressed in the Report and Recommendation the failure of the ALJ to properly consider the claimant's use of a cane to ambulate in formulating the RFC. The Court concurs in the Magistrate Judge's analysis of this issue and adopts that portion of the Report and Recommendation (Dkt. No. 15 at 27-28) as the order of the Court.

Finally, the Court notes that the ALJ found that one of the factors upon which he downgraded Plaintiff's credibility regarding the claimant's complaints of pain was because the testimony Plaintiff provided at the hearing was elicited from his attorney's "suggestive and leading questioning." Tr. 19. The Commissioner pledges to fairly consider a claimant's complaints of pain utilizing a long list of factors, none of which include the style of the claimant attorney's questions. SSR 96-7P, 1996 WL 374186 (July 2, 1996). The Court has reviewed the administrative record in this matter and did not find the questioning unduly suggestive or leading. Tr. 33-48. Moreover, the ALJ announced at the beginning of the hearing that the proceeding would be "relatively informal" and at no time did the hearing officer admonish the attorney regarding the style of his questioning. Tr. 32. Under these circumstances, the Court regards the ALJ's finding regarding Plaintiff's credibility on the critical issue of pain on the basis of his lawyer's style of questioning to be manifestly unfair and a violation of the Commissioner's duty to fairly consider the claimant's subjective complaints of pain. In the future, if the ALJ is concerned with the leading nature of a lawyer's questioning, he might just direct the attorney to stop leading the witness. The Court has found that simple directive normally ends any problem with leading questions.

-12-

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g), and remands the matter to the Commissioner for further action consistent with this opinion.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

February 14, 2014
Charleston, South Carolina

-13-